IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICK TARIQ RAHIM,<br><br>Defendant. | CASE NO. 3:23-CR-00011 |

## STATEMENT OF FACTS

The parties stipulate that the allegations contained in the Indictment and the following facts are true and correct, and that had this matter gone to trial, the United States would have proven each of these facts beyond a reasonable doubt. These facts do not constitute all the facts known to the parties concerning the charged offense. Rather, this Statement of Facts is intended only to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty, pursuant to Federal Rule of Criminal Procedure 11(b)(3).

RICK TARIQ RAHIM ("RAHIM") was a businessman residing in Great Falls, Virginia. RAHIM owned and operated several businesses, including BV Management LLC and Food Truck Company LLC. RAHIM had no law-enforcement or military experience or training and no firearms training. RAHIM has never resided in Culpeper County, Virginia. RAHIM was disqualified from owning firearms because of prior state felony convictions.

Defendant FRED GUMBINNER ("GUMBINNER") was a businessman and attorney residing in Fairfax, Virginia. GUMBINNER owned and operated several companies that were engaged in raising private capital and conducting specialized lending.

Defendant SCOTT HOWARD JENKINS ("JENKINS") was the Sheriff of Culpeper County, Virginia, which is located in the Western District of Virginia. JENKINS was an agent of both Culpeper County and the Culpeper County Sheriff's Office ("CCSO"), both of which received benefits exceeding $10,000 per year under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of federal assistance in each of the fiscal years ending 2019, 2020, 2021, 2022, and 2023.

Individual 1 was a businessperson residing in Prince William County, Virginia.

Relative 1 was a relative of JENKINS.

### A. RAHIM pays bribes to JENKINS

RAHIM met Individual 1 in approximately 2003 or 2004. RAHIM was aware that

1

Individual 1 was an Auxiliary Deputy Sheriff with one or more Sheriff's Offices in Virginia. In the late summer of 2019, Individual 1 asked whether he wanted to "support" JENKINS. RAHIM understood that "support" meant give money. Individual 1 stated that JENKINS would probably agree to make RAHIM an Auxiliary Deputy Sheriff in exchange for the support. RAHIM agreed.

On July 31, 2019, RAHIM and Individual 1 met with JENKINS at the CCSO. During the meeting, they discussed RAHIM's felony record and his desire to get his firearms rights restored and become an Auxiliary Deputy Sheriff. JENKINS claimed that he could use his official position to ensure that RAHIM's petition to restore his firearms rights would be granted. JENKINS and RAHIM agreed that RAHIM would provide things of value to JENKINS in return for JENKINS's using his official position to get RAHIM's firearms rights restored and promise to appoint him as an Auxiliary Deputy Sheriff. On two occasions, RAHIM gave JENKINS cash payments. The first occasion occurred in JENKINS's truck outside the CCSO when RAHIM gave JENKINS $15,000 cash in a manila envelope. Individual 1 was also present on that first occasion. Several months later, on or about September 19, 2019, RAHIM met JENKINS for dinner at Ruth's Chris Steakhouse in or near Tyson's Corner, Virginia. At the dinner, RAHIM gave JENKINS an envelope with $10,000 in cash. Individual 1 was not present on the second occasion.

In addition to the $25,000 in cash, RAHIM also made in-kind donations to JENKINS's campaign, including a campaign billboard and approximately 200 customized knives.

### B. RAHIM gives JENKINS a $17,500 loan that is never repaid

In the fall of 2019, JEKNINS asked RAHIM for a loan to cover costs associated with a new house JENKINS was building. JENKINS asked for $35,000. RAHIM agreed to facilitate the loan. RAHIM funded half the loan, or $17,500, and one of RAHIM's associates funded the other half. JENKINS never repaid the money that RAHIM loaned him. RAHIM did not request repayment because he wanted to maintain his relationship with JENKINS, and RAHIM was concerned that JENKINS would take back his badge if he sought repayment.

### C. JENKINS agrees to pressure and advise other officials to grant RAHIM's petition to restore his firearms rights

RAHIM and JENKINS discussed the fact that, under Virginia law, a petition to restore firearms rights must be filed in the county in which the petitioner resides. In or around September 2019, JENKINS arranged for RAHIM to enter a purported lease agreement for a rural property in Culpeper County (the "Culpeper Property") so that he could claim residency in Culpeper County. The lease agreement listed Relative 1 as the landlord. RAHIM visited the Culpeper Property but never entered the house. Instead, RAHIM continued to reside in Fairfax County, Virginia. RAHIM made one rent payment of $3,000 to Relative 1, representing the first six months' rent at a rate of $500 per month. RAHIM did not make any further rent payments.

On November 14, 2019, JENKINS accompanied RAHIM to file his petition for restoration of firearms rights in Culpeper County Circuit Court. The petition falsely stated RAHIM resided in Culpeper County. When the Covid-19 pandemic occurred in March 2020, the

2

Supreme Court of Virginia declared a judicial emergency suspending all non-essential, non-emergency court proceedings in all circuit and district courts. JENKINS discussed with RAHIM that he would pressure and advise the Circuit Court judge and officials in the Commonwealth's Attorney's office to process and approve RAHIM's petition. RAHIM and JENKINS communicated over multiple months about JENKINS's efforts to get the petition approved, including JENKINS calling the Circuit Court Judge and asking him to move up RAHIM's petition hearing from September 2020 to August 2020.

On or about August 14, 2020, the Circuit Court Judge held a hearing on RAHIM's petition. At the hearing, RAHIM falsely stated under oath that he resided in Culpeper County. That same day, the Circuit Court Judge granted RAHIM's petition for restoration of firearms rights. On or about August 17, 2020, the Culpeper County Circuit Court Clerk's Office mailed a copy of the Order granting RAHIM's petition for restoration of firearms rights to the Virginia State Police via the United States Postal Service.

### D. Rahim gets a concealed carry permit

On August 17, 2020, RAHIM filed an application for a concealed handgun permit from the Culpeper County Clerk's Office. In the application, he falsely represented that he was a resident of Culpeper County and again listed the Culpeper Property as his address.

While RAHIM's application was pending, JENKINS told RAHIM that he repeatedly directed Sheriff's Deputies to go to the Clerk's Office to pressure Clerk's Office employees to process the application. On or about September 2, 2020, the Circuit Court Judge granted RAHIM's application.

In or around December 2020, RAHIM was issued a Sheriff's Office identification card identifying him as a "Member of this Office" occupying the position of "Helicopter Pilot."

### E. JENKINS appoints RAHIM a Culpeper Sheriff's Auxiliary Deputy

On or about May 27, 2020, RAHIM traveled to Culpeper. The Circuit Court Clerk swore RAHIM in as an Auxiliary Deputy Sheriff and the Sheriff's Office issued him a deputy badge and identification card. JENKINS was present for RAHIM's swearing in.

### F. RAHIM helps GUMBINNER become an Auxiliary Deputy in exchange for a bribe

GUMBINNER and RAHIM met at a poker game prior to the spring of 2019. In or around April 2019, GUMBINNER and RAHIM were negotiating a deal whereby GUMBINNER would invest in BV Management LLC.

In or around April 2019, GUMBINNER expressed to RAHIM his interest in acquiring a Sheriff's deputy badge. RAHIM indicated that he could help GUMBINNER to obtain a badge, but that GUMBINNER would have to make a payment to JENKINS in exchange. RAHIM agreed to facilitate that transaction.

In or around July and August 2019, GUMBINNER and RAHIM discussed the amount of

3

money required to obtain a Sheriff's deputy badge. RAHIM indicated that GUMBINNER would have to pay $20,000 to JENKINS to obtain the deputy badge. Based on this discussion, GUMBINNER agreed to provide RAHIM with a $20,000 bribe payment to give to JENKINS.

On or about October 1, 2019, GUMBINNER and RAHIM met at RAHIM's office. GUMBINNER wrote RAHIM check number 1169 drawn on his personal bank account, in the amount of $20,000, payable to Food Truck Company LLC. In the memo line, GUMBINNER falsely wrote, "LLC Investment." The check was not, in fact, for an LLC investment. Instead, GUMBINNER intended for RAHIM to provide the $20,000 to JENKINS in exchange for JENKINS appointing GUMBINNER as an Auxiliary Deputy Sheriff and issuing him a Culpeper County Sheriff's Office deputy badge and identification card. RAHIM deposited the $20,000 check into a bank account he controlled and subsequently gave JENKINS $20,000 in cash.

On or about December 23, 2019, RAHIM texted GUMBINNER and Individual 1 stating, "Fred is the close friend who helped me provide all the recent support for our great Sheriff," and asking Individual 1 to facilitate GUMBINNER being sworn in as an Auxiliary Deputy Sheriff.

On or about March 6, 2020, GUMBINNER traveled to Culpeper and was sworn in as an Auxiliary Deputy Sheriff. The Culpeper Sheriff's Office issued him a deputy badge and identification card. GUMBINNER had no law-enforcement or military experience or training and no firearms training. He never resided in Culpeper County, Virginia.

Respectfully submitted,

_____
MELANIE SMITH
Assistant United States Attorney

_____
CELIA CHOY
Trial Attorney, Public Integrity Section
U.S. Department of Justice

After consulting with my attorney and pursuant to the plea agreement entered into this day, I stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
RICK TARIQ RAHIM, Defendant

4

I am Rick Rahim's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

_____
MICHAEL HEMENWAY, Esquire
Counsel for Defendant