CLERKS OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
May, 28, 2025
LAURA A. AUSTIN, CLERK
BY:s/ KELLY BROWN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 3:23CR00011-002 |
| | ) | |
| RICK TARIQ RAHIM | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Comes now the defendant, Rick Tariq Rahim ("Mr. Rahim"), by his counsel, and submits this Sentencing Memorandum for the sentencing hearing scheduled for Thursday, May 29, 2025.

I.  Introduction

Pursuant to 18 U.S.C. Section 3553(c), Federal Rules of Criminal Procedure, and Section 6A1.3 of the United States Sentencing Guidelines, Mr. Rahim, by counsel, hereby notifies this Honorable Court that he is in receipt of the Presentence Investigation Report prepared in this case. The basic facts of the offense are outlined in the "Offense Conduct" filed as PART A of the Presentence Investigation Report ("PSR"), dated March 4, 2025.

On April 22, 2024, pursuant to the terms of a written plea agreement, Mr. Rahim entered a plea of guilty to Count 1 and Count 2 of the Indictment. In accordance with the plea agreement, the parties agreed that Mr. Rahim would be held accountable for Conspiracy to Commit Federal Bribery and Honest Services Mail Fraud (Count 1) and Honest Services Mail Fraud (Count 2) and that USSG Section 2C1.1(a)(2), base offense level of 12, applies. The parties stipulated that a two-level increase is applicable ((USSG Section 2C1.1(b)(1), and a six-level increase is

1

applicable since value of payments was more than $40,000 (USSG Section 2C1.1(b)(2), and a four-level increase is applicable since offense involved a public official (USSG Section 2C1.1(b)(3).

The parties agreed that Mr. Rahim should receive a total of a three-level reduction for his acceptance of responsibility under USSG Section 3E1.1(a) and (b), and that he should be afforded a further downward departure for his substantial assistance.

Mr. Rahim believes that his relative role in the offense, his willingness to cooperate with the United States when he was apprehended and his limited and non-violent criminal history would make him an excellent candidate for a minimal term of incarceration. Such a sentence would clearly be sufficient, but not greater than necessary in this matter to achieve the goals set by Congress pursuant to 18 U.S.C. Section 3553.

Mr. Rahim intends to ask the Court, after considering the sentencing guidelines; the statutory sentencing factors; his extensive cooperation with law enforcement and the United States Attorney; and his very poor health; to impose a sentence of twelve (12) months and supervised release. USSG Section 5C1.1(c)(2)(3) and (d)(2). Such a sentence would be sufficient but not greater than necessary to satisfy the purposes of sentencing.

II.  Legal Standard

Congress has mandated that federal courts impose the least amount of imprisonment necessary to accomplish the purpose of sentencing as set forth in 18 U.S.C. Section 3553(a). Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for

the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from future crimes of the defendant and to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. Section 3553(a).

    III.    <u>The Court must consider all of the factors in 18 U.S.C. § 3553.</u>

It is now "emphatically clear" that the "Guidelines are guidelines—that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008). The Court must keep in mind that, as the Department of Justice itself has noted, determining the Guidelines range is no substitute for an independent determination of a sentence that is "appropriate [and] serve[s] the interests of justice." See Government Supp. & Am. Sentencing Mem., *United States v. Stone*, No. 19-cr-18 ABJ, ECF 286 (D.D.C. Feb. 11, 2020) (requesting a sentence "far less" than the "technically applicable" Guideline range because the range could have resulted in advisory sentencing ranges that are "unduly high," "excessive and unwarranted under the circumstances," and insufficiently reflective of the other Section 3553(a) factors); see also *Nelson v. United States*, 555 U.S. 350, 352 (2009); *Spears v. United States,* 555 U.S. 261, 265-66 (2009); *Kimbrough v. United States*, 552 U.S. 85, 107 08(2007); *Gall v. United States*, 552 U.S. 38, 47 (2007); *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Booker*, 543 U.S. 220, 259–60 (2005). Ultimately, the central mandate of Section 3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in Section 3553(a)(2) (emphasis added). This requirement is not just another factor for the Court to consider along with the others set forth in Section 3553(a). Rather, it sets an independent limit upon the sentence.

<u>Defendant's History and Characteristics</u>

Rick Rahim is 57 years old. He is married to Brenda Rahim and resides in Great Falls, Virginia with her and their three teenage children. He graduated from high school in Virginia in 1986, has some college credits, and has lived in Virginia most all of her life. He suffers from a myriad of ailments, as set forth in Paragraph 65 of the PSR. In addition, he underwent the first of two recommended spinal surgeries, a laminectomy, on January 2, 2025. Following this surgery, he was in the hospital for several days, where he was administered medication, including narcotics, intravenously. He continues his long, slow recovery at his home, and has continued taking narcotic medication prescribed by his doctor to manage the worst of lingering pain in the area of his incision and in his back generally. He continues to remain sedentary most of the day, and he reports that either standing or sitting is extremely painful unless he is medicated.

For these and the other reasons discussed below, the defense respectfully requests that the Court impose no more additional months than necessary in prison, or that his sentence run concurrently with that already imposed in the EDVA, followed by supervised release.

<u>A sentence of no more than 12 months is reasonable given the nature and circumstances of the offenses, and the history and characteristics of Mr. Rahim.</u>

Mr. Rahim offers no excuse for his offenses. Instead, because he intends to never again stray from the law, he has worked to identify what in him brought him to commit the offenses for which he has now accepted responsibility. Mr. Rahim recognizes that hoped-for ends did not justify using means he knew were wrong. He knows he must self-correct for his tendencies, and he must face up to what is hard. By agreeing to plead guilty, he has begun that process.

<u>A sentence of no more than 12 months is necessary to avoid unwarranted disparity.</u>

No two cases are exactly the same. But among useful points of comparison are those of the co-defendants in this case, Frederick Gumbinner and James Metcalf, who were found guilty

of the same bribery and fraud conspiracy as Mr. Rahim. The government proposes that this Court sentence Mr. Rahim to twice the sentence that they had recommended for Gumbinner and Metcalf. Significantly, both received a sentence of probation by this Court.

These two comparisons suggest that Mr. Rahim's sentence should fall somewhere between the 0 months of incarceration that Gumbinner and Metcalf received for the same offenses, and the 27 months that the government has recommended for Mr. Rahim.

<u>A sentence of no more than 12 months is sufficient to promote the goals of sentencing.</u>

The Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. 18 U.S.C. § 3553(a)(2)(A). The proposed sentence will do this. Incarceration for 12 months is a serious punishment, reflecting the seriousness of the offense, particularly for someone who has never served any time.

The proposed sentence would be significant punishment. Even a week of incarceration is serious: the incarcerated are stripped of personal effects, penned in, removed from their families, unable to earn a livelihood or support their loved ones, and deprived of agency over innumerable aspects of daily life, down to when to turn the lights on and off, and when to go outside. In Mr. Rahim's case, the sentence will ensure that he loses out on the last few years in which his children are in high school, an extraordinarily painful consequence for his actions. And the suffering inherent in incarceration will be amplified by his age and health challenges.

<u>Evidence that bribery and mail fraud crimes can be discovered, can be proved, and can result in a felony and prison time is sufficient to promote general deterrence.</u>

The sentence would also "afford adequate deterrence to criminal conduct." See § 3553(a)(2)(B). As for general deterrence, empirical research has shown that, while certainty of punishment has a deterrent effect, "increases in severity of punishments do not yield significant

5

(if any) marginal deterrent effects." Research has not shown that this is different in the white-collar context.

But even if it were the case that consequences others have incurred influence those contemplating criminal wrongdoing, then a year sentence would demonstrate to such people that both the "probability of conviction and significant consequences" are real, as the Tenth Circuit put it in *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) (emphasis added).

The combination of having been convicted, 12 months of prison, supervised release, remorse, and the knowledge of what he has done to his family will be enough to specifically deter Mr. Rahim from reoffending.

Likewise, any sentence in the range proposed, coupled with the knowledge that conviction is probable for future crimes, will be more than sufficient to promote specific deterrence of Mr. Rahim, and thereby protect the public. See § 3553(a)(2)(B), (C).

Further, prison is not the only way to encourage specific deterrence. Supervised release will also serve that goal. A federal probation officer will closely monitor his activity when he is on supervised release, making it very difficult for Mr. Rahim to offend again, even if he were so inclined. And Mr. Rahim is not so inclined. He is devastated that his wife and children will be without him, and face major life changes.

In any case, the proposed sentence of incarceration will be sufficient to achieve the goals of sentencing in this case. As stated, any sentence of incarceration is profoundly serious punishment, particularly for someone who has never served any time, who is 57 years old, and who is not well. In addition, both co-defendants Frederick Gumbinner and James Metcalf received a sentence of Probation, which in both cases was below their sentencing guidelines and below the recommendation of the government. Clearly, evidence that bribery and mail fraud

crimes can be discovered, can be proved, and can result in a felony conviction is sufficient to promote general deterrence.

Mr. Rahim has already received a harsh punishment for his criminal behavior. On March 18, 2025, Rahim was sentenced to 60 months of imprisonment in the Eastern District of Virginia for willful failure to account for and pay taxes, *United States v. Rahim*, 23 CR 173 CMH, ECF No. 79 (E.D. Va. 2025), and 78 months for wire fraud, *United States v. Rahim*, 24 CR 179 CMH, ECF No. 46 (E.D. Va. 2025), which were run concurrently.

Under the Sentencing Guidelines, "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3.

The Government notes that Rahim's sentencing in the instant case could have proceeded prior to the sentencings in the other two (EDVA) cases after the jury trial concluded in December 2024. In fact, had Rahim not postponed his spinal surgery until after the jury trial, in which he was a valuable witness for the government, Rahim might well have done so.

The combination of having been convicted of this offense, 78 months of prison in the Eastern District of Virginia case, supervised release, remorse, and the knowledge of what he has done to his family will be enough to specifically deter Mr. Rahim.

IV.     Downward departure or Variance

While the U.S. Sentencing Guidelines are advisory rather than mandatory following *United States v. Booker*, 543 U.S. 220 (2005), this Court must still consider them as a starting point before weighing all of the sentencing factors enumerated in 18 U.S.C. § 3553(a). These factors include "the history and characteristics of the defendant" (§3553(a)(1)) and "the need for the

sentence imposed to provide the defendant with needed medical care... in the most effective manner" (§3553(a)(2)(D)).

A "variance" outside the guideline range provided for in the *Guidelines Manual* should occur after consideration of all relevant departure provisions. *Gall v. United States*, 552 U.S. 38, 49 (2007). In sum, the ability to vary preserves the district court's ultimate ability to impose, regardless of what the guidelines range is found to be, a sentence that it views is "sufficient, but not greater than necessary" to serve the goals of sentencing. 18 U.S.C. Section 3553(a), See, e.g. *United States v. Ausburn*, 502 F.3d 313, 327 (3rd Cir. 2007).

Specifically, USSG §5H1.4 provides that "physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." It further states that "an extraordinary physical impairment may be a reason to depart downward."

<u>Rahim's Medical Condition Creates Circumstances That Support a Variance and/or a delayed reporting date.</u>

Mr. Rahim recently underwent a laminectomy, a significant spinal surgery. Despite the surgical intervention, Mr. Rahim continues to experience substantial pain and physical limitations that constitute an "extraordinary physical impairment" under USSG §5H1.4.

The report prepared by Dr. Charles Howard, **attached as Exhibit**, confirms the following:

1. Mr. Rahim underwent laminectomy surgery on January 2. 2025.
2. Mr. Rahim continues to experience severe pain,

3. Mr. Rahim requires significant medication for pain management.
4. Mr. Rahim's mobility is significantly restricted.
5. Dr. Charles Howard has indicated that Mr. Rahim should be allowed at least a six to eight month period for his rehabilitation post-operatively, which would be July to September, 2025.

The Court should impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing outlined in 18 U.S.C. § 3553(a). A downward variance and/or delayed surrender date in this case would better serve these purposes because a non-custodial or reduced sentence would allow Mr. Rahim to receive medical care "in the most effective manner," as explicitly contemplated by the statute. *Medical Care Provision* (§3553(a)(2)(D)). In addition, given Mr. Rahim's physical suffering, a guidelines-range sentence would impose punishment disproportionate to that experienced by defendants without similar health challenges. *Just Punishment* (§3553(a)(2)(A)). Mr. Rahim's physical condition also significantly reduces any risk to public safety, as his/her mobility and physical capabilities are already severely restricted. *Protection of the Public* (§3553(a)(2)(C)). Finally, Mr. Rahim's health condition is a significant personal characteristic that distinguishes this case from typical cases contemplated by the guidelines. *History and Characteristics* (§3553(a)(1)).

Given these considerations, Mr. Rahim respectfully requests that the Court impose a significantly reduced term of imprisonment, followed by a period of supervised release with special conditions addressing medical needs; and a delayed reporting date to allow for further recovery and stabilization of Mr. Rahim's condition.

## *CONCLUSION*

For all of these reasons, and such others as may be offered at the hearing on this matter, the defense respectfully requests that the Court impose a total sentence of no more than twelve (12) months in prison, followed by a term of supervised release; and to impose a delayed reporting date to allow for further recovery and stabilization of Mr. Rahim's condition.

Respectfully submitted on May 22, 2025.

                                            Respectfully submitted,

                                            RICK RAHIM
                                            By Counsel

/s/Michael T. Hemenway
Michael T. Hemenway, Esquire
700 East High Street
Charlottesville, VA  22902
Telephone: (434) 296-3812
hemenwaylaw@aol.com

## CERTIFICATE OF SERVICE

I hereby certify that on 22nd day of May, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                            s/Michael T. Hemenway